IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MARINE EXPLORATION, INC.	:
					:
		Plaintiff,			:
					:	CIVIL ACTION
					:
	v.				:	Case No.: 8:08-cv-01045-RAL-MAP
					:
THE UNIDENTIFIED, WRECKED AND	:
(FOR FINDERS-RIGHT PURPOSES)	:
ABANDONED SAILING		:
VESSEL, if any, its apparel, tackle,	:
appurtenances and cargo located within	:
center point coordinates:  to be provided	:
to the Court under seal at the Court's request	:
					:
		*in rem*			:
					:
		Defendant(s).		:

**PLAINTIFF'S MOTION FOR ORDER GRANTING PRELIMINARY
INJUNCTIVE RELIEF AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, hereby moves for entry of an Order granting a preliminary injunction:  (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Site, its apparel, tackle, appurtenances, and cargo (hereinafter, "Defendant Site"); (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Site within the area(s) described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to recover the Defendant Site within the areas described in the Complaint.

The grounds supporting this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

## MEMORANDUM OF LAW IN SUPPORT

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Site, its apparel, tackle, appurtenances, and cargo (here-inafter, "Defendant Site"); (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Site within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with Odyssey's exclusive rights to recover the Defendant Site within the areas described in the Complaint.

### I. BACKGROUND

In the spring of 2008, Odyssey first located the Defendant Site using sophisticated sonar and magnetometer equipment. The Defendant Site rests on the sea floor within the English Channel at a depth of less than 200 meters between 25 and 40 miles from the Coast of the United Kingdom beyond the territorial waters or contiguous zone of any sovereign nation.

Odyssey has used a surface-controlled remotely operated vehicle ("ROV") to survey the wreck site and to take photographic images. The wreck site consists of cannons and other unidentified objects. Odyssey believes that potentially valuable cargo may be located at or near the site.

Odyssey is conducting research to determine the origin of the Defendant Site. Based on a preliminary assessment of video and photographs taken of the wreck site by Odyssey's technicians, the Defendant Site is believed to be a shipwreck from the Colonial period.

Odyssey believes that the recovery operations must be undertaken in accordance with strict archaeological protocols, and has recovered a piece of glass which was intended to be used for the symbolic arrest of this site. An archaeological excavation and conservation plan is being developed to ensure that its recovery operations are consistent with these protocols. Odyssey anticipates that it will begin recovery operations once its excavation plan is completed and the weather and currents in the area are conducive to safely engaging in recovery operations.

Upon information and belief, no other salvor is, or has been, working in the area described in the Complaint. Since discovery of the site, Odyssey has maintained actual, continuous, and exclusive possession or constructive occupancy of the wreck site to the extent this is possible. Due to the possibility of valuable artifacts at the Defendant Site, Odyssey anticipates that its recovery efforts may be subject to interference from rival salvors or entities claiming an interest in the wreck or wreck site. Accordingly, Odyssey has moved for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Site, its apparel, tackle, appurtenances, and cargo; (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Site within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with

Odyssey's exclusive rights to recover the Defendant Site within the areas described in the Complaint.

II. **STANDARD FOR GRANTING INJUNCTIVE RELIEF**

In this Circuit, the four requirements for awarding preliminary injunctive relief are:

(1) a substantial likelihood that the party requesting relief will ultimately succeed on the merits;

(2) the party requesting relief will suffer irreparable injury if the injunction is not issued;

(3) that threatened injury to the moving party outweighs harm to the opposing party; and

(4) the injunction, if issued, will not be adverse to the public interest.

See *Siegel v. Lepore*, 234 F.3d 1163 (11th Cir. 2000); *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561-62 (11th Cir. 1989), *aff'd*, 498 U.S. 479 (1991); *United States v. Alabama*, 791 F.2d 1450, 1459 n.10 (11th Cir. 1986), *cert. denied*, 479 U.S. 1085 (1987).

As set forth below, Odyssey satisfies each of these four requirements. Therefore, an award preliminary injunctive relief is appropriate in this matter.

III. **ARGUMENT**

A. **There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claims**

This is a salvage case involving admiralty and maritime claims under the law of salvage and the law of finds.[1] Regardless of which legal theory is ultimately found to apply

---

[1] As a case involving an admiralty and maritime claim, this Court has jurisdiction over the subject matter pursuant to the Constitution of the United States, Article III, Section 2, Clause 1, 28 U.S.C. § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure. Claims arising out of salvage operations are unquestionably within the admiralty jurisdiction of the federal courts. *See Treasure Salvors, Inc. v. Unidentified, Wrecked and*

to the case, there is a substantial likelihood that Odyssey will ultimately succeed on the merits of either or both of its claims.

### 1. There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Finds

The maritime law of finds gives title to a person who has reduced to possession an object which has been lost at sea. *See Columbus-America Discovery Group v. The Unidentified, Wrecked and Defendant Sailing Vessel*, 974 F.2d 450 (4th Cir. 1992), *cert. denied*, 507 U.S. 1000 (1993). This doctrine has been consistently recognized in admiralty, and courts have awarded title to shipwrecks to the finder when warranted by the facts. *See Treasure Salvors, Inc. v. The Unidentified, Wrecked and Defendant Sailing Vessel*, 569 F.2d 330, 337 (5th Cir. 1978) (*Treasure Salvors I*); *Martha's Vineyard Scuba Headquarters, Inc. v. The Unidentified, Wrecked and Defendant Vessel*, 833 F.2d 1059, 1065 (1st Cir. 1987); *Indian River Recovery v. The CHINA*, 645 F. Supp. 141 (D. Del. 1986).

A finding of abandonment may be inferred from all of the relevant facts and circumstances, and may be based on circumstantial evidence. *Zych v. Unidentified, Wrecked and Defendant Vessel Believed to be the LADY ELGIN*, 755 F. Supp. 213, 214 (N.D. Ill.

---

*Defendant Sailing Vessel*, 640 F.2d 560, 566-67 (5th Cir. 1981) (*Treasure Salvors III*). Furthermore, U.S. admiralty courts unquestionably have jurisdiction to adjudicate salvage claims based on salvage operations that occur on the high seas. *See Treasure Salvors III*, 640 F.2d at 566-67 ("The subject matter jurisdiction thus granted is not limited to causes of action arising from acts or occurrences on the territorial waters of the United States."); *Treasure Salvors I*, 569 F.2d at 334 ("the presence of the *res* within the district is not an absolute prerequisite to the court's jurisdiction."). It is common for U.S. admiralty courts to assert *in rem* jurisdiction over shipwrecks located in international waters and even within the territorial seas of foreign nations. *See Marex v. Unidentified, Wrecked and Defendant Vessel*, 952 F. Supp. 825, 828 (S.D. Ga. 1997); *R.M.S. Titanic, Inc. v. The Wrecked and Defendant Vessel*, 924 F. Supp. 714 (E.D. Va. 1996); *Bemis v. R.M.S. Lusitania*, 884 F. Supp. 1042 (E.D. Va. 1995), *aff'd*, 99 F.3d 1129 (4th Cir. 1996), *cert. denied*, 118 S. Ct. 1558 (1998).

1991), *aff'd*, 960 F.2d 665 (7th Cir. 1992). Under the facts of this case, there is a substantial likelihood that Odyssey will be able to prove that the Defendant Site has been abandoned by its original owner. There appears to be no evidence which would suggest that any other entity has made an effort to recover the Defendant Site. Thus, the Court should find that the vessel has been abandoned and award title to Odyssey under the maritime law of finds.

### 2. There Is A Substantial Likelihood That Odyssey Will Ultimately Succeed On The Merits Of Its Claim Under The Law Of Salvage

The common law of salvage applies to property that is lost at sea but has not been abandoned by its original owner. The law of salvage grants a liberal reward to those who voluntarily engage in efforts to save a vessel in peril at sea, and it promotes the orderly recovery of such property. *See The BLACKWALL*, 77 U.S. 1 (1869). It is well recognized that three elements must be established in order to present a salvage claim:

(1) a marine peril from which the property could not have been rescued without the assistance of the salvor;

(2) service voluntarily rendered when not required as a pre-existing duty; and

(3) success, in whole or in part, of recovery of the imperiled property.

*See The SABINE*, 101 U.S. 384 (1879); *Treasure Salvors, Inc. v. The Unidentified, Wrecked and Defendant Sailing Vessel, "Nuestra Senora de Atocha,"* 546 F. Supp. 919, 930 (S.D. Fla. 1981) (*citing Legnos v. M/W Olga Jacob*, 498 F.2d 666, 669 (5th Cir. 1974)).

Odyssey's activities with respect to the Defendant Site satisfy all three of these elements, and therefore is a salvage operation within the meaning of the law.

### a. The Defendant Site Is In Marine Peril

A marine peril "includes more than the threat of storm, fire or piracy to a vessel in navigation." *Treasure Salvors I*, 569 F.2d at 337. The concept of marine peril also includes a sunken vessel which is discovered after being long lost but is "still in peril of being lost through actions of the elements." *Id. See also Platoro Ltd., Inc. v. Unidentified Remains*, 614 F.2d 1051 (5th Cir. 1980); *Fort Myers Shell & Dredging Co. Barge NBC512*, 404 F.2d 137, 139 (5th Cir. 1968) (the "peril required in salvage service need not necessarily be one of imminent or absolute danger, either presently or reasonably to be apprehended"). Thus, the Defendant Site satisfies the definition of marine peril because it is "still in peril of being lost through actions of the elements." *See Treasure Salvors I*, 569 F.2d at 337.

### b. Odyssey Is Voluntarily Rendering Service When Not Required As A Pre-Existing Duty

Odyssey is under no duty to recover the Defendant Site. Instead, it is voluntarily rendering service to rescue the Defendant Site from being lost forever through the action of the elements in the sea *and* from the possibility that the vessel, if any, or its artifacts will be further damaged by the elements, or hastily recovered by salvors without regard for the site's historic and archaeological value. Accordingly, Odyssey has satisfied the second element of a salvage claim.

### c. Odyssey Is Substantially Likely To Succeed, In Whole Or In Part, In Recovering The Imperiled Property

Odyssey has already demonstrated that it is capable of finding, surveying and photographing, conducting an archaeological excavation and recovering artifacts from a shipwreck site at the depths that this site is located. Odyssey is ready, willing and able to

initiate its archaeological recovery operations, and has done so for the limited purpose of beginning the process of identification of this wreck site. Moreover, Odyssey has the equipment, manpower and experience required to successfully complete archaeological recovery operations.

Odyssey has recovered some artifacts from the Defendant Site, and Odyssey is actively and ably engaged in reducing the Defendant Site to its possession. Odyssey has taken constructive possession of the wreck site to the extent its age, depth and condition permit. Accordingly, Odyssey is substantially likely to succeed in recovering the imperiled property, and it has satisfied the final element of a successful salvage claim.

B. **Odyssey Will Suffer Irreparable Injury If Injunctive Relief Is Not Issued**

Odyssey has expended considerable resources in locating, studying and surveying the Defendant Site, in researching its origin, in preserving the historical value of the wreck by photographing and documenting the site, and in developing an archaeological excavation and conservation plan. Odyssey has committed its financial resources, time, manpower, equipment and its vessels to these efforts, as well as to its preparation for the actual recovery operations. To allow others to come in at this time and reap the benefits of Odyssey's labor would constitute irreparable harm and injury to Odyssey for which there would be no adequate remedy at law. *See Treasure Salvors*, 546 F. Supp. at 929; *Deep Sea Research, Inc. v. The Brother Jonathan*, 883 F. Supp. 1343, 1362 (N.D. Cal. 1995), *aff'd*, 102 F.3d 379 (9th Cir. 1997), *aff'd in part, vacated in part and remanded*, 118 S. Ct. 144 (1998).

As the Fifth Circuit explained in *Treasure Salvors III*:

> A salvor. . . has a valuable interest in his salvage operations which the law protects by vesting in the salvor certain rights. Among the most important of these rights are the right to exclude others from participating in the salvage operations, so long as the original salvor appears ready, willing and able to complete the salvage project, and the right to possession of the salved property, a right exclusive even of the owner, until such time as the salvage lien on the property is extinguished or adequate security for this obligation is given.

640 F.2d at 567.

Odyssey risks losing its legal rights and substantial investment to date if the Court does not award preliminary injunctive relief. Consequently, the Court should enter a preliminary injunction protecting Odyssey's continued right to exclusive possession of the Defendant Site, and protecting it from interference from rival salvors.

### C. Odyssey's Potential Injury Outweighs The Injury Of Any Other Party

At this time, Odyssey is the only party claiming an interest in the Defendant Site. The wreck is located beyond the territorial waters or contiguous zone of any sovereign nation. It is not known whether any original owner of the vessel, its successors or assigns, will claim an interest in the wreck, but there is insufficient evidence available to Odyssey at this time to determine the identity of the site. In the event that the identity of the site is determined, Odyssey will make every effort to identify and notify potential claimants to the site. At this point, Odyssey is not aware of any other party, including fishermen, salvors, divers or others that may have discovered or recovered parts of the site, that has sought a salvage claim, or that has attempted to reduce the site to its possession.

Consequently, Odyssey's potential injury outweighs the injury of any other party, since Odyssey will suffer serious irreparable injury if an injunction is not issued, and it is unlikely that any other party will suffer injury if preliminary injunctive relief is awarded to Odyssey.

D.  **An Injunction Will Not Be Adverse To The Public Interest**

Odyssey is committed to recovering the Defendant Site in a manner that benefits the public interest. The recovery operation and artifact preservation will be conducted in accordance with strict archaeological protocols. Furthermore, Odyssey intends to make certain that recovered artifacts are available for public display and educational purposes as well as historic and scientific study. Consequently, the issuance of an injunction will not be adverse to the public interest. To the contrary, the issuance of a preliminary injunction permitting Odyssey to conduct a competent, safe, scientific and successful recovery of the Defendant Site can only benefit the public interest. *See Treasure Salvors*, 546 F. Supp. at 929.

IV.  **CONCLUSION**

For the foregoing reasons, Odyssey respectfully requests that the Court grant its motion for entry of an Order granting a preliminary injunction: (1) appointing Odyssey exclusive salvor-in-possession or finder-in-possession of the Defendant Site, its apparel, tackle, appurtenances, and cargo; (2) awarding Odyssey priority salvage status, and sole and exclusive possession of the Defendant Site within the areas described in the Complaint; and (3) temporarily enjoining and restraining any and all interference by any third parties with

Odyssey's exclusive rights to salvage the Defendant Site within the areas described in the Complaint.

Respectfully submitted,

Dated: June 19, 2008

s/ Allen von Spiegelfeld
Allen von Spiegelfeld – FBN 256803
avonsp@fowlerwhite.com
Eric C. Thiel – FBN 016267
ethiel@fowlerwhite.com
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, Florida 33601
(813) 228-7411
Facsimile: (813) 229-8313

Melinda J. MacConnel – FBN 871151
Odyssey Marine Exploration, Inc.
5215 West Laurel Street
Tampa, FL 33607
(813) 876-1776, ext. 2240
Fax: (813) 830-6609
E-mail: mmacconnel@shipwreck.net

Attorneys for Plaintiff

33C